# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TOMISHA LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-cv-2208 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| FIRST TRANSIT, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant First Transit, Inc.'s motion to dismiss [9]. For the reasons set forth below, Defendant's motion to dismiss [9] is granted. Plaintiff is given until April 17, 2017, to file an amended complaint consistent with this opinion.

**I.      Background**

Defendant First Transit, Inc. operates a customer service call center for the Regional Transit Authority, which helps to administer and oversee public transit in Northeastern Illinois. On September 22, 2014, Defendant hired Plaintiff Tomisha Love to work as a customer service representative. By December 2014, Plaintiff was pregnant.

Plaintiff noticed that she was experiencing some bleeding while at work on December 8, 2014. She alleges that she had "a serious medical condition associated with her then pregnancy, miscarriage" and "[a]t the time that Plaintiff was experiencing these symptoms her pregnancy was substantially limiting the major life activities of working, concentrating, and interacting with others." [1, ¶ 11.] Plaintiff asked her supervisor if she could leave work early and her supervisor agreed but requested that Plaintiff provide a doctor's note to excuse her absence. It is not clear if Plaintiff simply suffered from an increased risk of miscarriage or if she, in fact, miscarried on December 8 (or some other date). It is also not clear what Plaintiff told her supervisor when

1

asking to leave work on December 8 (*e.g.*, that she was bleeding, that she had a higher risk of miscarriage, that she had just miscarried, some combination of these events, or something else).

Plaintiff returned to work on December 9, but did not have a doctor's note. Her supervisor then sent her home from work. Sometime later, Plaintiff tried to provide Defendant with "documentation of her condition and hospital visit but was denied the opportunity to do so." [1, ¶ 15.] On December 11, Plaintiff was terminated over the phone, allegedly because of her unexcused absence. *Id.* ¶ 16. She received a letter three days later confirming her termination.

On April 20, 2015, Plaintiff filed a charge of discrimination against Defendant with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), which states:

> I began my employment with [Defendant] on September 22, 2014 as a customer service representative. In November 2014, I became pregnant and informed [Defendant]. On or about December 8, 2014 I had to leave work because of a miscarriage. The next day, on December 9, 2014, [Defendant] informed me that I was terminated. I believe I was discriminated against based on my disability in violation of the Americans with Disabilities Act of 1990, as amended. I believe I was discriminated against based on my pregnancy in violation of the Pregnancy Discrimination Act of 1978, as amended.

[10-1.]

On February 12, 2016, Plaintiff filed a complaint against Defendant, asserting claims under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*. ("ADAAA") and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"). [See 1.] She did not pursue a claim under Title VII of the Civil Rights Act as amended by Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). Defendant filed a motion to dismiss the complaint in its entirety. [See 9.]

2

## II. Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

## III. Analysis

Plaintiff's complaint raises three claims, styled as two counts. Count I asserts claims under the under the ADAAA for both disability discrimination and failure to accommodate her disability. Count II asserts a claim under the FMLA. As a threshold matter, Plaintiff concedes in her response that she cannot state a claim under the FMLA. [See 13, at 2, 10.] Accordingly, the Court grants the motion to dismiss Count II, Plaintiff's FMLA claim.

Defendant advances two main arguments for dismissal of Plaintiff's remaining ADAAA claims. First, it argues that Plaintiff failed to exhaust her administrative remedies for a failure to accommodate claim. Second, it argues that Plaintiff failed to plead sufficient facts to show that she is a qualified individual with a disability, which dooms both ADAAA claims. The Court takes each argument in turn.

A.   **Failure to Exhaust**

"Generally, a plaintiff may not bring claims under [ADAAA] that were not originally included in the charges made to the EEOC." *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). An exception to this rule is if "the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999); accord *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011) ("[I]f certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'" (citation omitted). To be "reasonably related," the EEOC charge and relevant claim "must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).

Plaintiff's EEOC charge states that she "was discriminated against based on [her] disability." [10-1][1] An employee may state a claim for discrimination under the ADA by

---

[1] Plaintiff references her EEOC charge in the complaint [1, ¶ 5], but did not attach the charge to the complaint. Defendant did attach it [see 10-1], but asks this Court not to convert its motion to dismiss to a motion for summary judgment on that basis—a request that Plaintiff does not oppose. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). An EEOC charge is a prerequisite to filing a claim. *Moore*, 641 F.3d at 256. Accordingly, the Court may consider the EEOC charge without converting this motion to a motion for summary judgment. See, *e.g.*, *McCauley v. Akal Sec., Inc.*, 833 F. Supp. 2d 864, 866 (N.D. Ill. 2011);

4

advancing either (1) a failure to accommodate theory—that is, the employer failed to provide a reasonable accommodation for the employee's disability—or (2) a "disparate treatment" theory—that is, the employer treated the employee differently *because of* her disability. *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997). According to Defendant, Plaintiff's charge states only a disparate treatment theory. [10, at 4–5.] Because Plaintiff did not mention any failure to accommodate in her EEOC charge, Defendant insists that Plaintiff has failed to exhaust her administrative remedies for this claim. For this point, Defendant relies exclusively on *Green* and *Aberman v. Board of Education of City of Chicago*, 2014 WL 4912139 (N.D. Ill. Sept. 30, 2014).

In *Green*, the plaintiff alleged that her employer failed to provide her with a "suitable desk chair," "appropriate dimmer lighting," and a handicap parking spot to accommodate her disabilities. 197 F.3d at 898. Plaintiff's EEOC charge, however, claimed only that she had been fired because of her disabilities. *Id.* at 897. The Seventh Circuit affirmed summary judgment for the defendant, holding that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and "they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Id.* at 898. The Seventh Circuit further explained that it "fail[s] to understand how [plaintiff] could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge" because defendant's alleged failure to accommodate "has nothing to do with her complaint that she was wrongfully terminated." *Id.*

---

*Drebing v. Provo Grp., Inc.*, 494 F. Supp. 2d 910, 911–12 (N.D. Ill. 2007); *E.E.O.C. v. Concentra Health Servs., Inc.*, 2006 WL 2024240, at *3 (N.D. Ill. July 12, 2006); *Nebel v. City of Burbank,* 2003 WL 1606087, at *3 (N.D. Ill. Mar. 27, 2003).

Several courts in this circuit have interpreted *Green* not to state a bright-line rule that failure to accommodate claims can *never* be "reasonably related" to a disability discrimination claim stated in an EEOC charge.[2] These courts have often found that a failure to accommodate claim can be reasonably related to a disability discrimination claim where "(a) a plaintiff was discharged for failing to return to work and (b) time away from work was exactly the accommodation the plaintiff had sought." *Ortiz v. Bd. of Educ. of City of Chi.*, 2013 WL 3353918, at *5 (N.D. Ill. July 2, 2013).

In fact, this Court made this same point in *Aberman*. In the opinion cited by Defendant, the Court applied *Green* to dismiss plaintiff's failure to accommodate claim because her charge

---

[2] *Edwards v. Ill. Dep't of Fin.*, 2016 WL 5233460, at *5 (N.D. Ill. Sept. 22, 2016) ("Whether or not a reasonable accommodation claim is sufficiently related to a discrimination claim turns on the circumstances surrounding the failure to accommodate claim."); *Dibelka v. Repro Graphics, Inc.*, 2014 WL 5858553, at *3 (N.D. Ill. Nov. 12, 2014) ("[I]t is possible for a plaintiff's disability discrimination claims to encompass his failure to accommodate * * * claims[.]"); *Morales v. Goodwill Indus. of Se. Wisc., Inc.*, 2014 WL 4914255, at *4 (N.D. Ill. Sept. 30, 2014) ("These cases, as well as the case at bar, differ materially from *Green* because in each one, the conduct underlying the discrimination claim did 'ha[ve] [some]thing to do with' the conduct underlying the accommodation claim. In each case, it was the defendant's alleged failure to accommodate that actually caused the plaintiff to be terminated."); *Butler v. Chi. Transit Auth.*, 2014 WL 3939654, at *5 (N.D. Ill. Aug. 12, 2014) (declining to dismiss failure to accommodate claim because "it is possible that an investigation into [plaintiff's] wrongful termination claim would have unearthed her claim about the termination meeting itself and possibly about the additional violations before her termination"); *Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 798–99 (N.D. Ill. 2011) (holding that, under *Green*, "an employee cannot always expect that a failure to accommodate claim will arise out of an investigation that an employee was unlawfully terminated because of a disability," but concluding that "the accommodation and discharge claims in this case arise from the same core facts" because the "termination was, in effect, a refusal to provide [plaintiff] with the accommodation he sought"); *Mudgett v. Centegra Health Sys., Inc.*, 2006 WL 1806390, at *4–5 (N.D. Ill. June 27, 2006) (denying motion to dismiss accommodation claim because "it is difficult to ascertain from *Green* the line at which the charge does not say enough to support a complaint" and "nothing in the cited law that requires an individual to specifically state 'reasonable accommodation' anymore than to specifically state 'disparate treatment'"); *Davis v. Am. Drug Stores, Inc.*, 2003 WL 21149063, at *3 (N.D. Ill. May 19, 2003) ("[T]he decision to discharge plaintiff was, in effect, a refusal to provide her the accommodation of further time off. Because plaintiff's accommodation claim is the mirror image of her discharge claim, it is viable even though she did not include it in her EEOC charge."); see also *Whitaker v. Milwaukee Cty., Wisc.* 772 F.3d 802, 813 (7th Cir. 2014) (summarizing EEOC's view that "there can be cases where a discriminatory termination claim can be so closely related to a reasonable accommodation claim that it would be appropriate to consider an unstated reasonable accommodation claim along with a stated discriminatory discharge claim," but noting that it was unnecessary to reach that issue in this case and "[a]ny refinement of our approach to *Green* must therefore await a case in which the issue is necessary for decision").

stated "only that she was discriminated against based on her disability and age in being 'forced on a medical leave of absence' and reassigned to a less desirable proposition." 2014 WL 4912139, at *3–4. The plaintiff then moved for reconsideration, citing *Ortiz*. *Aberman*, Case No. 12-cv-10181, Dkt. 45, at 5. In denying that motion, the Court explained:

> In the instant case, Plaintiff's failure to accommodate claim is not based on her failure to return to work after she sought a reasonable accommodation of time away from work. Plaintiff's accommodation claim relates to her request for a Bluetooth headset for use in the classroom, made after she was placed on an involuntary leave of absence. Thus, the instant case is distinguishable from the specific factual situation outlined in *Ortiz/Wamack* and the Court's prior ruling stands.

*Id.* Dkt. 52, at 4.

Here, Plaintiff's charge states that she "was discriminated against" when she was "terminated" the day after needing to "leave work because of a miscarriage." [10-1.] Of course, the term "discrimination" in the ADA can "encompass[]" both "disparate treatment" and "failing to provide a reasonable accommodation." *Sieberns*, 125 F.3d at 1022. And, in this case, Plaintiff's accommodation and disparate treatment allegations stem from identical, interrelated facts. Plaintiff alleges that she was denied the reasonable accommodation of an excused absence to attend her doctor's appointment for her disability [1, ¶ 13] and she was terminated because of that same absence (*id.* ¶¶ 14–18). In other words, Plaintiff's theory is that Defendant failed to accommodate her disability *by* terminating her for a disability-related absence.[3] These allegations involve the same conduct by the same personnel and can reasonably have been expected to "develop from an investigation into the charges actually raised" with the EEOC. *Green*, 197 F.3d at 898; *Cheek*, 31 F.3d at 501. Thus, Plaintiff's failure to accommodate claim is

---

[3] The complaint is somewhat inconsistent on this point, asserting both that Defendant "allowed Plaintiff to leave work early" [1, ¶ 12] and that she "requested an accommodation of permission to leave work early due to her medical condition" but "Defendant refused that request, and did not engage in an interactive process with Plaintiff or suggest and alternative accommodation of any kind" (*id.* ¶ 29). The Court understands Plaintiff to mean that Defendant refused to accommodate Plaintiff by excusing her absence.

7

reasonably related to her charge, and the Court declines to dismiss on the basis that she did not exhaust this claim.

B. **"Qualified Individual with a Disability"**

"The ADA prohibits employers from taking adverse employment actions against their employees because of a disability." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012); see 42 U.S.C. § 12112(a). To establish a violation of the ADAAA, the employee must prove "1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (citation omitted). If an employee is not disabled, "then neither [her] discrimination claim nor [her] failure to accommodate claim can proceed, as this is the first element of both claims." *Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 935–36 (7th Cir. 2006).

To state a claim under the ADAAA, Plaintiff must plead that she has a "disability," which is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). EEOC regulations define "physical or mental impairment" as encompassing conditions affecting the reproductive system. 29 C.F.R. § 1630.2(h)(1). In addition, the phrase "major life activities" is defined to include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i). While the phrase "substantially limits" must be "construed broadly in favor of expansive coverage, to the

maximum extent permitted by the terms of the ADA" and can include "episodic" impairments and even "an impairment lasting or expected to last fewer than six months," "not every impairment will constitute a disability." *Id.* §§ 1630.2(j)(1)(i), (ii), (vii), (ix).

Before 2008, courts routinely held that medical conditions associated with a typical pregnancy did not qualify as a disability under the ADA. See, *e.g.*, *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 553 (7th Cir. 2011) (applying ADA in effect prior to the 2008 amendments to hold that "[c]ourts that consider these regulations consistently find that pregnancy, absent unusual circumstances, is not a physical impairment" (collecting cases)); *Gorman v. Wells Mfg. Corp.*, 209 F. Supp. 2d 970, 975 (S.D. Iowa 2002) ("the majority of federal courts hold that absent unusual circumstances, pregnancy-related medical conditions do not constitute a disability" (collecting cases)); *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996) ("With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA." (collecting cases)).

Although the 2008 amendments broadened the ADA's definition of disability, these changes have had only a modest impact when applied to pregnancy-related conditions. See, *e.g.*, *Lang v. Wal-Mart Stores E., L.P.*, 2015 WL 1523094, at *2 (D.N.H. Apr. 3, 2015) ("[P]regnancy is not an actionable disability, unless it is accompanied by a *pregnancy-related* complication."); *Annobil v. Worcester Skilled Care Ctr., Inc.*, 2014 WL 4657295, at *11 (D. Mass. Sept. 10, 2014) (granting summary judgment for defendant where plaintiff "provides no legal argument as to whether such symptoms [including headaches, nausea and vomiting] differ from normal symptoms of pregnancy and how these complications are disabling"); *Mayorga v. Alorica, Inc.*, 2012 WL 3043021, at *5 (S.D. Fla. July 25, 2012) (Post-ADAAA, "[p]regnancy, absent unusual circumstances, is not considered a disability under the ADA." (collecting cases)). That may be

9

because the EEOC's Interpretive Guidance continues to state—even after the ADAAA—that "conditions, *such as pregnancy*, that are not the result of a physiological disorder are also not impairments." 29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). Furthermore, the EEOC's post-ADAAA enforcement guidelines on pregnancy discrimination continue to advise that "pregnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability." EEOC No. 915-003, Enforcement Guidance: Pregnancy Discrimination and Related Issues, 2015 WL 4162723, at *19 (June 25, 2015) ("2015 Enforcement Guidance").

That said, "some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA, as amended." *Id.* In fact, "a number of pregnancy-related impairments that impose work-related restrictions will be substantially limiting, even though they are only temporary." *Id.* Examples include pregnancy-related anemia, sciatica, carpal tunnel syndrome, gestational diabetes, nausea sufficient to cause severe dehydration, abnormal heart rhythms, swelling, depression, cervical insufficiency as well as post-partum-related impairments. *Id.* at *20. Likewise, the EEOC guidance makes clear that "a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition" or "may constitute a 'record of' a substantially limiting impairment or may be covered under the 'regarded as' prong if it is the basis for a prohibited employment action and is not 'transitory and minor.'" 29 C.F.R. Pt. 1630, App. § 1630.2(h). "Thus, where a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of a disability." *Mayorga*, 2012 WL 3043021, at *5.

With these principles in mind, the Court returns to the complaint. As noted, Plaintiff's allegations are not the model of clarity. Specifically, she alleges that "*her pregnancy* was substantially limiting the major life activities of working, concentrating, and interacting with others" and her "request for an accommodation, to leave early, was reasonable due to her medical condition, *pregnancy*." [1, ¶¶ 11, 13 (emphasis added).] Based on those allegations, Defendant moved to dismiss on the grounds that pregnancy, without more, does not qualify as an impairment under the ADAAA. [10, at 6.] Rather than contest that general point, Plaintiff responds that she "is not alleging that her pregnancy itself was a disability, but rather the symptoms associated with her pregnancy, such as bleeding and miscarriage, impaired major life activities." [13, at 7.] Assuming the complaint can be fairly construed to state *that* claim, the main disputed issue becomes whether Plaintiff pled sufficient facts to show that her pregnancy-related complications imposed a "substantial limit" on her "major life activities."

Plaintiff has failed to do so. She does not allege that she experienced pregnancy-related complications prior to or after December 8, 2014. As noted above, she does not even clearly plead whether or when she had a miscarriage or what she told her employer when she asked to leave work. All she alleges is that she experienced bleeding related to a miscarriage or a risk of miscarriage while at work on December 8, was allowed to leave work early, and then "appeared for work" the next day. [1, ¶¶ 11–14.] Her claim that she experienced a substantial limit on major life activities of "working, concentrating, and interacting with others" relates solely to "the time that Plaintiff was experiencing these symptoms." *Id.* ¶ 11. In other words, Plaintiff alleges that the only limit on any major life activities existed from the time that she left work early on December 8 to when she returned to work on December 9.

11

Plaintiff does not cite any case law holding that an impairment lasting less than a day can qualify as a "substantial limit" on major life activities. Cf. *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 719, 723 (N.D. Ill. 2015) (holding, where plaintiff "became pregnant, and in the ensuing *months* she suffered fatigue, nausea, anxiety and gestational diabetes as a result of her pregnancy," that the "the temporary nature of [her] impairment does not bar her claim here" (emphasis added)); *Nayak v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2013 WL 121838, at *3 (S.D. Ind. Jan. 9, 2013) (denying motion to dismiss where plaintiff's pregnancy-related complications lasted "roughly eight months" and at least two months "beyond her pregnancy"). Indeed, courts applying the ADAAA continue to find that impairments of a very short-duration do not substantially limit major life activities absent extenuating circumstances.[4] The EEOC's Interpretive Guidance regarding the ADAAA is consistent with this conclusion, noting that "'[i]mpairments that last only for a short period of time are typically *not* covered, although they may be covered if sufficiently severe.'" 29 C.F.R. Pt. 1630, App. § 1630.2(j)(1)(ix) (emphasis added and citation omitted). Here, Plaintiff does not allege any facts or cite any case law suggesting that her pregnancy-related complications could plausibly meet the "sufficiently severe" standard notwithstanding her return to work within one day following these

---

[4] See, *e.g.*, *Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475, 483 (N.D. Tex. 2015) (granting summary judgment where the evidence showed plaintiff's "possible period of impairment spanned no more than a few days"); *Leone v. All. Foods, Inc.*, 2015 WL 4879406, at *6 (M.D. Fla. Aug. 14, 2015) ("[S]ince it is undisputed that any limitation on these activities resulting from [plaintiff's] eye injury was of short duration (just over two weeks), it cannot be said that they were *substantially* limited."); *Mastrio v. Eurest Servs., Inc.*, 2014 WL 840229, at *4–6 (D. Conn. Mar. 4, 2014) (dismissing ADAAA claim based on the allegation that plaintiff "was required to miss work for approximately one month while he underwent treatment for his kidney stones" because "there were no more limitations on any major life activities" and "temporary or short term disabilities are not covered by the statute absent allegations highlighting the extreme severity of the disability"); *Feldman v. Law Enf't Assocs. Corp.*, 955 F. Supp. 2d 528, 539 (E.D.N.C. 2013) ("[Plaintiff] has not offered any evidence beyond his overnight visit to the hospital to show that the [mini-stroke] substantially impaired the major life activity of working or any other major life activity."); *Lewis v. Florida Default Law Grp., P.L.*, 2011 WL 4527456, at *5 (M.D. Fla. Sept. 16, 2011) ("the fact that [plaintiff] could not perform those functions for a period of one to two weeks does not mean her symptoms 'substantially limited' those activities").

complications.  While "an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of" the ADAAA, 29 C.F.R. § 1630.2(j)(1)(ix), the Court is not persuaded that this language can be stretched to cover a period of impairment lasting fewer than twenty-four hours based on these facts as currently pled.

Because Plaintiff has failed to plead sufficient facts to show that she is disabled, she fails to state a claim for disparate treatment or a failure to accommodate under the ADAAA. Accordingly, the Court grants Defendant's motion to dismiss Count I without prejudice and with leave to replead by April 17 if Plaintiff believes that she can do so consistent with the discussion above.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss [9].  Plaintiff is given until April 17, 2017, to file an amended complaint if she believes that she can cure the deficiencies set out above.

Dated: March 16, 2017

Robert M. Dow, Jr.
United States District Judge